Parker, J.
This action is brought to reverse the judgment of the court of common pleas in an action wherein Henry Criss was plaintiff,and the Cincinnati, Hamilton & Dayton Railway Company was defendant, brought by the plaintiff below for damages for personal injuries sustained by him in consequence of alleged negligence upon the part of the railway company. The case went to trial, and resulted in a verdict of $7500 in favor of the plaintiff below. Various exceptions were taken during the course of the trial, which appear in the bill of exceptions, which is a part of the record here. A motion for a new trial was taken, on the grounds, (1.) That there was error in the admission of evidence on behalf of the plaintiff below, which was objected to and exception taken by the defendant in error. (2.) That the verdict was not sustained by sufficient evidence. (3.) That the verdict was against the weight of the evidence. (4.) That the verdict was contrary to law and the evidence. (5.) That the damages awarded were excessive. (6.) For errors of law occurring upon the trial. This motion was overruled, and judgment entered on the verdict.
A sufficient statement of the cause of action stated in the petition is found in the brief filed here on behalf of the plaintiff in error, and I will read from that:
“May 8th, 1895, Henry Oriss filed his petition against the defendant in which he alleges, in substance, as follows: That the defendant is, and for a long time has been, maintaining, in connection with its railway, certain yards containing numerous side tracks for the use of cars operated on said line of railway; that one of said tracks, known as No. 8, was used by the defendant for the purpose of receiving and standing cars thereon which had been received from the Lake Shore & Michigan Southern Railway Company; that it was usual and customary for said Lake Shore Company to deliver to said defendant on said track; that on the 10th day of April, 1895, the plaintiff was in the employ of *400 the said The Lake Shore & Michigan Southern Railway Company as a brakeman; that about 3 o’clock in the morning of said day, while it was dark, it became the duty of the plaintiff, in connection with other employes, to switch three cars from the tracks of the Lake Shore Company and to place the same on said track No. 8 for the defendant; that when these cars came to the vicinity of said tracls, it was found that the same was almost filled with cars, and the plaintiff was ordered by his conductor to go along said track and make room for said additional cars; that plaintiff did find room on said track for these cars, but that it was necessary to couple together the cars already standing •thereon; that while plaintiff was attempting to couple said cars he stepped upon a quantity of oil negligently permitted to accumulate and remain upon said track, lost his balance, and in attempting to save himself from falling, his left hand got between the drawbars, and was so injured that it became necessary to amputate the same at the wrist. * He therefore asks damages.”
To the petition an answer was filed, which is in form a general denial of all the allegations except that respecting the railway company being a corporation duly incorporated, etc. The answer contains this averment also:
‘ ‘The damage complained of in plaintiff’s said petition was caused and occasioned by the carelessness and negligence of said plaintiff, and that the negligence and carelessness of said plaintiff then and there directly contributed to the damage complained of in said petition.”
Upon the trial, however, most of the facts controverted by this answer were admitted or conceded, or were established beyond controversy by the proofs. The real questions of fact which were controverted, were as to the manner in which the accident happened, and as to whether there was an accumulation of oil upon the track as alleged in the petition, it being contended by the defendant below, that instead of the plaintiff slipping upon the oil as he went between the cars to couple them, he undertook to couple the cars and did not give himself sufficient time to make the *401 coupling; that he had sufficient time if he had taken it, but he waited until the cars came too closely together, then attempted to change a link from one car to another and make the coupling, and in consequence of his time being too short for that operation, his hand was caught and crushed, so that it was required to be amputated. It was claimed that something of this kind was admitted by plaintiff to a witness when he was being conveyed from a place near where the accident occurred to the city hospital. The plaintiff, however, on the witness stand denied that he had ever made any such statement or admission,
I will consider, first, the exceptions noted as to the admission of evidence upon the trial of the case. Upon page one of the bill of exceptions appear the following questions and answers: The plaintiff is testifying in his own behalf:
“Q. What wages were you receiving at the time you lost your hand? A. Well, I think it was $2.50 a night for ten hours.
“Q. Tell what the opportunity was, if any, for promotion to.a steady job from the work you were doing at that time. ”
“Objected to by counsel for defendant,and objection sustained.’’
Further down the page:
“Q Now I will ask you what was the custom of the Lake Shore Company, if you know, with reference to giving a man who was working in the position you were,a better position or steady work. (Objected to by counsel for defendant, objection overruled, to which defendant, by counsel, duly excepted.) A. If you understand the .work they will give you a better position.
“Q. What is the custom with reference to the length of time a man is required to continue working in the position such as you were before being advanced to steady work? (Objected to by counsel for defendant; overruled; defendant excepted.) A. Well, if you understand the work they would give — put you up.
*402 ,lQ. How long Mould you have to be employed as an extra, ordinarily, under the custom, to get steady work ? A. He could learn in about a year — lie would know all about it.
”Q. Was there any'custom about giving an extra man the preference in hiring men to do steady work over men who had not worked as extras? (Objected to; overruled; defendant excepted.) A. They would give it to the oldest man. '
“Q. Make that plain, now, just what the custom was, and who they would give steady work to, and how that was done. (Objected to; overruled; defendant excepted.) A. You would go in your turn; there was several extra men.
“Q. The oldest extra man would come in for the steady job first under the custom? (Objected to; overruled; defendant excepted.) A. Yes, sir.
“Q. What do you say about a man having to work as extra or not under the custom on that road at that time before he would receive such a steady job? (Objected to; overruled; defendant excepted.) A. It all depends on how many quit. If anybody quits, the next man takes his place.”
It appears from the testimony of this witness that according to the custom he is undertaking to tell about, the chances of an improved situation on the road did not amount to much more than a bare possibility. Under certain circumstances it would seem that certain men, with certain experience, after performing satisfactory work for the company, might be promoted, and might improve their condition — ‘might receive easier or more profitable employment. We are not prepared to say that testimony of that character may not, under some circumstances, be prejudicial and erroneous. We are unable to see, however, where the answers of the witness in this case with respect to the alleged custom of this railroad company could have in any way prejudiced the plaintiff in error. For that reason we hold that there was no error in the record with respect to them. No authority is citpd upon either side on this proposition, *403 and we have not been able, in the time we have had to examine the ease, to find any bearing directly upon it; therefore we do not undertake to lay down any rule on the subject, but simply iky, under the circumstances of this case, we cannot say that the answers were prejudicial.
Coming down to pages 79 and'80. Edward Criden was testifying as a witness on behalf of the plaintiff below. He testified that soon after the accident — the next morning, perhaps — he went along the track about where this accident is said to have occurred, and that he discovered oil upon the track at a certain point. He is asked this question:
“Q. Tell the jury if you noticed or looked to see whether there was any oil upon the track along about where the cross-mark appears? A. This exact spot?”
He refers to a cross-mark upon a certain photograph that was exhibited to him, there being other testimony tending to show that the accident occurred-at the point where the cross-mark was made on the photograph.
“Q. Yes; about that place, as near as you can get it from this photograph. A. There is oil in different spots all along that track.”
A motion was made to rule this answer from the jury, which was overruled, and counsel for the defendant excepted. Counsel proceeds with the witness:
‘‘Q. Just describe the oil as you saw it along on the tracks — along on this track No. 8, about where that cross-mark appears — -I mean as you observed it there the next day. A. I dont know as I can say for sure that it was at that exact point or not.
”Q. Well, along at this place, and in the neighborhood of that cross-mark, right along there. (Objected to, unless he can testify as to the condition of this track at the place where the accident happened.)
”Q. If you observed track No. 8, along in the neighborhood.and at the place marked with a cross-mark, along about that locality, so as to be able to describe the condition of the tracks on th.e day that you were working there after *404 Criss got hurt, please state what you saw there. (Objected to by defendant’s counsel, unless the question is limited to-the place where it is claimed this accident happened, which is indicated on that photograph by a cross. Overruled; defendant excepted.) A. It was spotted with oil on different parts of the track. (Motion made to strike out answer by defendant’s counsel; overruled; defendant excepted.)
“Q. Confine your answer to the immediate neighborhood or at the place where the cross-mark appears, about that place- — -what you saw there, if anything, in the way of' oil.”
The same objection was made, and the court says:
“His attention is now called to a particular photograph, Exhibit ‘B’ — if he noticed the condition and can say what the condition of the track was there at the point indicated in the photograph, or in the vicinity of it. He may testify to that. He is now testifying with reference to this picture-before him, and the mark . that is indicated there. (Defendant by counsel duly excepted.)
Mr’. Brumback: “ Everything else may be stricken out except what, he testifies to with reference to this place- and the immediate vicinity.”
Mr. Tyler: “I made my objections, and the court has-passed on them, and I have saved my exceptions.”
Mr. Brumback: “I don’t care if any testimony is ruled out, excepting the part inquired about, and the immediate-vicinity of this cross-mark; in other words, where the accident occurred. We don’t know where the accident occurred, therefore we can not restrict it to any definite-place, only in the immediate vicinity of that cross-mark. I concede, perhaps, it is not proper testimony as to anywhere else — at least I don’t want to take the chance of' any error, and the court may rule out answers of the-witness so far as any other place is concerned.”
It will be observed, also, that in addition to this declaration upon the part of counsel for plaintiff that he claimed' nothing from such testimony, that the questions of counsel to the witness were with reference to oil at or in the immediate vicinity of the place where the accident was said. *405 to have occurred; so that in so far as the answers told of oil at any other place, they were not responsive to the questions of counsel.
Mr. Tyler then remarks: “Then my objection to all these answers should, be sustained. ”
The Court: “The testimony of this witness, then, that there was oil on that track in any place except in the immediate vicinity of the cross-mark indicated on this picture, will be excluded from the consideration of the jury, and you will not consider it, gentlemen, as evidence in this case as to the condition of that track.’’
So that it seems that at this point counsel for the defendant below requested that the court rule this testimony from the jury, and the court, acting upon that as well as upon the suggestion of counsel for the plaintiff, did so. It is urged, however, by counsel for plaintiff in error that this testimony was prejudicial, and that the admission of it was error, and that the ruling of the court taking it from the jury on his motion and in accordance with the suggestion of counsel on the other side, did not cure the error; and he insists that the verdict should be set aside, notwithstanding that action of the court. In 16 Ohio St., 221, appears the case of Thomas Mimms v. The State of Ohio — a criminal case. This is said in the syllabus:
“Where the court improperly overruled the objection of the defendant to testimony offered on the trial by the state, the judgment against him will not be reversed for such erroneous ruling, when the court, on motion of the defendant, excluded all the testimony so given from the consideration of the jury, and 'instructed them that it must be wholly disregarded. ’’
This was a murder case — criminal case of the highest character, in which the strictest rule ought to be observed by the court, and if there was any error that might be prejudicial — that might not be cured by taking the matter from the consideration of the jury — certainly careful con *406 sideralion would be given to that suggestion, in a case where a man upon trial was in peril of his life. I will hot stop to read from the opinion of the court upon the subject, but call attention to another casein which this question was before the supreme court of Ohio, found in 19 Ohio St., page 596 — the case of Klein v, Thompson. This was an action for damages on account of assault and battery, Nothing is said about the point in issue in the syllabus, but at page 571 this appears:
“Declarations of the defendant,made subsequently to the assault and battery, and tending to show express malice in the defendant in inflicting the injury complained of, were also allowed, against the exception of the defendant, to go in evidence. But the court subsequently, during the progress of the trial, on discovering that the petition contained no averment of malice, ruled out the evidence, and instructed the j.ury to disregard it.”
Whether that was done upon the motion of either party does not appear.
“It is contended that the introduction of' this evidence was error to the prejudice of the defendant, which was not cured by subsequent exclusion. In this state we do not regard the admission of improper evidence to the jury, which is afterward ruled out, as of itself constituting ground for reversal; though the question of its influence in producing a wrong verdict ought to be considered on a motion for a new trial. ”
Citing the case of Mimms v. The State in 16 Ohio St., 221.
I recollect that there was an interesting case involving this question decided in the third circuit some years ago, I think in Auglaize county, but I have not been able to lay my hand upon the report. There the same claim was made by the plaintiff in error, that the prejudice was so great resulting from the admission of testimony that the judgment ought to be reversed, notwithstanding the fact that the court *407 attempted to disabuse the minds of the jury of the effect of it; and if I reeollect the case correctly, the circuit court laid down the rule that it must clearly appear that the testimony must have had that effect upon the minds of the jury; that it will be presumed that the jury observed the instructions of the court to disregard the evidence which was ruled away from them; and that only in case where the testimony was of such a character that it would appear to a reviewing court that it would be impossible for a court by any sort of an instruction, or for the jury by any Rind of a resolution or effort, to eradicate the prejudicial impression from their minds, would a reviewing court be justified in reversing a judgment on account of such testimony. We do not think this testimony is at all of that character. There is some question as to whether it was of a character that required a ruling of the court to take it from the jury.
Upon page 94 is a question that I believe is not insisted upon in argument. The witness is asked this: “Tell the jury whether you observed oil leaking at that place where you understood Mr. Oriss got hurt, before he got hurt.” That was objected to, and the objection overruled, and exception taken. The witness had testified to the means by which he had ascertained and identified the place of the accident, so that the jury might have been allowed to consider his testimony, as to oil at the place he observed, and at the same time decide whether or not it was the place at which Oriss was injured.
Those, I believe, are all of the exceptions to the admission of testimony. There were no exceptions taken to the charge of the court, or to any action of the court with respect to the giving or refusing of charges requested.
That leaves, then, for further consideration the question whether the verdict is sustained by the evidence. Upon that I say briefly,that we think that the facts alleged in the *408 petition amount to negligence upon the part of the railroad companyjwhichjwould make it liable to this plaintiff below for^anyi, injury which he might have received in the line of duty, and while in the exercise-of due care upon his part, he^being an employe of another company; and we think that the facts alleged are fairly established by the evidence. It is also urged that the verdict is against the weight of the evidence. Without entering into a discussion of this evidence, or reciting what it is, I will say in brief that we have carefully considered this question, having gone through the bill of exceptions and read carefully the testimony of the witnesses and scrutinized it closely, and we cannot agree with this view of the matter. Therejare six witnesses on behalf of the plaintiff below, including himself, who testify positively to having seen this oil on the railroad track at or about the place where Criss was injured. Some of them appear to be entirely disinterested witnesses. Some of them say they saw oil in such quantities that they might have readily shoveled it up. They were unable to tell just what the depth of the oil'was, and they might readily have been mistaken, and have overstated its depth; but making a fair allowance for that, we think it fairly appears from the testimony that there was such a quantity of oil there, and that it remained for such a length of time, that the railroad comppny was guilty of negligence in not removing it'.- On the other' hand, there are four witnesses on behalf of the defendant below who undertook to testify as to the oil. They simply say that they saw no oil. Some of them could not and would not undertake to tell whether or not there was oil there, but they were in and about there under such circumstances that if there had been oil there, they may have failed to have discovered it. They were not looking for nor thinking about oil; they were there for the purpose .of examining cars, to see if there were any defects in them that might have re- *409 suited in this accident. Their attention was not drawn to the question whether, there was or was not oil on the track. We think the verdict is not opposed to the weight of the evidence.
Swayne, Hayes & Tyler, for Plaintiff inError.
Hard, Brumback & Thatcher, for Defendant in Error,
It is also urged that the verdict is excessive in amount, We do not think so: we think it is warranted by the evidence.